1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AMRON SUZANNE RUMMEL,                    No.  2:21-cv-202-KJN

12                   Plaintiff,               ORDER

13          v.                                (ECF Nos. 17, 20.)

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits and Supplemental Security Income.[1]  In

19   her summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in

20   (A) evaluating the medical opinions and evidence concerning her physical and mental limitations;

21   (B) resolving her subjective symptom testimony; and (C) resolving her father's testimony.

22   Plaintiff seeks a remand for a grant of benefits or for further proceedings.  The Commissioner

23   opposed, and filed a cross–motion for summary judgment.

24          For the reasons that follow, the court DENIES plaintiff's motion for summary judgment,

25   GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the

26   Commissioner.

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     consented to proceed before a Magistrate Judge for all purposes.  (ECF Nos. 7, 14, 15, 16.)

1

1

## I.      RELEVANT LAW

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) (Title II); 1382c(a)(3) (Title XVI).  An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**:  Is the claimant capable of performing past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
> **Step five**:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4) (Title II); 416.920(a)(4) (Title XVI).  The burden of proof rests with the claimant through step four, and with the Commissioner at step five.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence."  Id. at 1154.  Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion.  Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).  However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely.  Id.  "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Ford, 950 F.3d at 1154.  Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld."  Id.  Further, the court may not reverse the ALJ's decision on account of harmless error.  Id.

2

## II.     BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In late 2018 and early 2019, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of August 1, 2015.  (Administrative Transcript ("AT") 226.)  Plaintiff claimed disability due to "Depression; Chronic Fatigue Syndrome; Fibromyalgia; and Memory Problems."  (See AT 122-23.)  Plaintiff's applications were denied initially and upon reconsideration, and she sought review with an ALJ.  (AT 136-37; 164-65; 179.)  At a June 2020 hearing, plaintiff testified about her conditions, and a vocational expert ("VE") testified regarding the ability of a person with certain impairments to perform various jobs.  (AT 46-91.)

On August 3, 2020, the ALJ issued a decision determining plaintiff was not disabled.  (AT 27-40.)  As an initial matter, the ALJ determined plaintiff met insured status through June 30, 2016.  (AT 29.)  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since August 1, 2015.  (Id.)  At step two, the ALJ determined plaintiff had the following severe impairments:  obesity, chronic fatigue syndrome, cervical spondylosis and grade 1 anterolisthesis, migraine headaches, and depression.  (AT 30.)  The ALJ found plaintiff's sleep apnea non-severe.  (Id.)  At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1.  (Id., citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  For mental impairments, the ALJ applied and considered Listing 12.04 for "depressive, bipolar, and related disorders" and considered both Paragraphs B and C.  (AT 30-32.)  Under Paragraph B, the ALJ found moderate limitations in each of the four Paragraph B categories.  (Id.)  The ALJ found plaintiff's impairments did not qualify under Paragraph C.  (Id.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light work, with the following additional limitations:

> [She] can lift and carry and push and pull 20 pounds occasionally and 10 pounds frequently[;] can stand and walk for 30 minutes at time, with the option to sit at the workstation and continue working for 10 minutes after 30 minutes of standing or walking[;] can sit for six hours[;] can occasionally stoop, climb ramps and stairs, balance, kneel, and crouch, and she can never crawl or climb ladders, ropes, and scaffolds[;] must avoid concentrated exposure to extreme cold,

3

> extreme heat, humidity, and pulmonary irritants[;] must avoid concentrated exposure to loud noises and bright light[;] can understand, remember, and carry out simple tasks[;] can make simple work-related decisions[;] can have frequent work-related interactions with co-workers and supervisors and occasional work related interaction with the general public[;] and can have occasional changes in the work setting.

(AT 32.)  In crafting this RFC, the ALJ stated he considered plaintiff's intense, persistent, and limiting symptoms alongside the medical evidence and opinions of plaintiff's medical sources. (Id.)  Relevant here, the ALJ considered a 2015 opinion from Dr. Rosenbaum stating plaintiff could only walk a half a block without rest, would fall asleep after only 20 minutes of sitting, could stand for less than a minute, and would have her chronic fatigue syndrome exacerbated by light stress and physical exertion.  (AT 35-36.)  The ALJ found this opinion unpersuasive because it was based on two office visits and a phone call, otherwise failed to cite support in the record, and was inconsistent with the more-recent evidence in the record.  (AT 36.)  The ALJ found partially persuasive the opinions of the two state-agency physicians who assigned physical limitations similar to those adopted in the RFC.  (AT 37.)  However, the ALJ assigned greater restrictions in plaintiff's ability to sit/stand, and so rejected those physicians' less-restrictive limitations.  (Id.)  As to plaintiff's mental impairments, the ALJ found persuasive the opinions of the two state-agency psychiatrists who found "moderate" impairments in the four Paragraph B criteria, adopting their opined limitations into the RFC.  (Id.)  The ALJ rejected those portions of plaintiff's testimony alleging greater limitations, finding them unsupported by the medical record, and inconsistent with both her conservative course of care and daily activities.  (AT 38.)  The ALJ concluded that while plaintiff was incapable of performing past relevant work, jobs existed in the national economy she could perform, including a routing clerk, price marker, and assembler.  (AT 39-40.)  Therefore the ALJ determined plaintiff was not disabled.  (AT 40.)

Plaintiff submitted additional medical and non-medical evidence in her appeal to the Appeals Council.  (AT 2.)  The Council disregarded the statement of Dr. Gordon as outside of the disability period at issue, incorporated into the record statements from three of plaintiff's friends and an opinion from Dr. Stroller, but found no reasonable probability of a different outcome. (Id.)  Plaintiff then filed this action requesting judicial review of the Commissioner's final

1  decision, and the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 17, 20, 23.)

2  **III.   ISSUES PRESENTED**

3  Plaintiff contends the ALJ erred in (A) evaluating the medical opinions and evidence

4  concerning (1) her physical limitations; (2) her mental limitations; (B) resolving her subjective

5  symptom testimony and (C) resolving her father's testimony.  Plaintiff seeks a remand for a grant

6  of benefits or for further proceedings.  (ECF Nos. 17, 23.)

7  The Commissioner disagrees, arguing that given the low threshold of the substantial

8  evidence standard, the ALJ (A) properly considered the medical opinions and properly formulated

9  the RFC; (B) properly rejected the more severe aspects of plaintiff's subjective symptom

10  testimony; (C) sufficiently considered the non-medical statements.  Thus, the Commissioner

11  contends the decision as a whole is supported by substantial evidence.  (ECF No. 20.)

12  **IV.   DISCUSSION**

13  **A.  Medical Evidence and Opinions**

14  **Legal Standards, Medical Opinions and Prior Administrative Medical Findings**

15  For applications filed on or after March 27, 2017, an ALJ need "not defer or give any

16  specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

17  administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including

18  those from [a claimant's] medical sources."  See 20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to

19  evaluate medical opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a).  In

20  determining how "persuasive" the opinions of a medical source or PAMF is, an ALJ must

21  consider the following factors:  supportability, consistency, treatment relationship, specialization,

22  and "other factors."  § 404.1520c(b), (c)(1)-(5).

23  Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for

24  each factor varies.  § 404.1520c(a)-(b).  In all cases, the ALJ must at least "explain how [she]

25  considered" the supportability and consistency factors, as they are "the most important factors."

26  § 404.1520c(b)(2).  For supportability, the regulations state: "[t]he more relevant the objective

27  medical evidence and supporting explanations presented by a medical source are to support his or

28  her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the

opinion or PAMF] will be." § 404.1520c(c)(1).  For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be." § 404.1520c(c)(2).  The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and "other") only where "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." § 404.1520c(b)(2)&(3).  An ALJ may address multiple opinions from a single medical source in one analysis. § 416.920c(b)(1) ("source-level articulation").  "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence."  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

**Analysis**

**1.  Plaintiff's Physical Impairments**

Plaintiff's first contention focuses on the ALJ's findings regarding her physical impairments, specifically concerning her extreme fatigue and ability to maneuver.  Plaintiff notes the ALJ did not wholly rely on the PAMFs in formulating the physical limitations for the RFC because these physicians actually found plaintiff less physically restricted than what was assigned in the RFC.  However, the ALJ also rejected the greater limitations expressed by Dr. Rosenbaum (as well as plaintiff herself).  Plaintiff argues that without a physician's opinion or lay testimony aligning with the limitations added to the RFC the ALJ's foundation for the decision is lacking.

Reviewing the physical-limitations portion of the decision, the decision shows the ALJ considered the two PAMF opinions, Dr. Rosenbaum's opinion, and plaintiff's subjective symptom testimony.  Regarding Dr. Rosenbaum, the decision noted his 2015 opinion that plaintiff was disabled due to her inability to walk more than a half-block without rest, sit for just over two hours at a time, stand for only a minute, and stay awake for longer than 20 minutes at a time.  (AT 35-36, citing AT 438-44.)  However, the ALJ found the opinion unpersuasive, noting the extreme limitations opined were based on a limited record before Dr. Rosenbaum (stretching a few months between March and July of 2015), lacked a showing of any treatment

recommendations by the doctor, merely cited a diagnosis of chronic fatigue syndrome, and relied on plaintiff's own statements regarding her symptoms.  (Id.)  To contrast, the ALJ found "partially persuasive" the two physicians who issued opinions in the PAMFs in May and August of 2019.  (AT 36.)  The ALJ found these opinions were supported by the evidence they cited, but noted some inconsistency between their less-restrictive limitations and what was demonstrated by the longitudinal evidence and plaintiff's symptom reports.  (AT 36-37.)

Taken individually, there is nothing improper about the ALJ's reasoning regarding the opinions of these physicians.  Under the new regulations, the ALJ must articulate rationales regarding supportability and consistency, as the old hierarchy-based framework has largely been replaced.[2]  See Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)); see also 20 C.F.R. § 404.1520c(c)(1) and (2) (stating that an ALJ should find an opinion more persuasive if it is (1) supported by "more relevant [] objective medical evidence and supporting explanations presented by a medical source," and (2) consistent with "the evidence from other medical sources and nonmedical sources in the claim").  Despite the change in regulations, prior case law can illustrate where an ALJ did/not properly explain the decision and provide substantial evidence therefor, as the concepts of "supportability" and "consistency" are not new.  See, e.g., Le v. Astrue, 318 F. App'x 552, 554 (9th Cir. 2009) (noting the ALJ's recognition of a physician's lack of longitudinal medical support can support a rejection for portions of the opinion) (citing Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)); Maria G. v. Saul, 2020 WL 3620097, at *6 (E.D. Wash. Mar. 11, 2020) (noting how an ALJ may properly reject a medical opinion as inconsistent where the decision cites facts and conflicting evidence in the record) (citing Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007)); Tommasetti v.

---

[2] For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [a claimant's] medical sources."  See 20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a).  In determining how "persuasive" the opinions of a medical source or PAMF is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  § 404.1520c(b), (c)(1)-(5).

1   Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (reminding that an ALJ may discount a medical

2   opinion "based to a large extent on a claimant's self-reports that have been properly discounted as

3   incredible"); see also 20 C.F.R. § 404.1513(a)(4) (noting statements from nonmedical sources,

4   including plaintiff's subjective reports, are to be considered, but are not dispositive).

5            The thrust of plaintiff's argument, however, appears to be that if the ALJ rejected Dr.

6   Rosenbaum's more-restrictive limitations (as well as those testified to by plaintiff herself), but

7   found the two PAMF's only partially persuasive because they disregarded plaintiff's conditions,

8   therefore what evidence did the ALJ have to support the RFC that appears to fall somewhere in

9   between?  As the new regulations indicate, this is a gap that can be filled by the medical evidence

10  of record.  The RFC is an administrative finding formulated with agency discretion.  See 20

11  C.F.R. § 404.1546(c) ("[T]he administrative law judge . . .is responsible for assessing your

12  residual functional capacity.").  True, the formulated RFC must be based on substantial evidence,

13  but the current regulations specifically include "objective medical evidence" as a relevant

14  category of evidence.  20 C.F.R. § 1513(a)(1).  Here, the ALJ rejected Dr. Rosenbaum's opinion,

15  but found the opinions in the PAMFs did not adequately account for the four years of medical

16  records generated after Dr. Rosenbaum's consultations.  (AT 36-37.)  The ALJ then went on to

17  discuss the medical evidence, specifically noting how information contained in plaintiff's primary

18  care records support an RFC with physical limitations in between what Dr. Rosenbaum and the

19  PAMF physicians would have assigned.  Under the new regulations, this is permissible.  Woods,

20  32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)); see also Rounds v. Comm'r, 807 F.3d 996,

21  1006 (9th Cir. 2015) ("The ALJ is responsible for translating and incorporating clinical findings

22  into a succinct RFC."); Parker v. Kijakazi, 2021 WL 5166004, at *5 (E.D. Cal. Nov. 5, 2021)

23  (noting longstanding precedent on how an RFC need not mirror any particular opinion).  To the

24  extent plaintiff would have the court make its own findings regarding the persuasiveness of these

25  opinions, that is a request beyond the power of the court.  Ford, 950 F.3d at 1154 (reminding that

26  the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and

27  resolving ambiguities").

28            Addressing the remaining arguments regarding the ALJ's assessment of plaintiff's

1    physical limitations, the court notes that the ALJ was not required to discuss Dr. Rosenbaum's

2    status as a treating physician.  The regulations require the ALJ to "consider" topics beyond

3    supportability and consistency, including a physician's specialty and extent of the treatment

4    relationship.  See 20 C.F.R. § 404.1520c(c).  However, these other factors need not be articulated

5    in the decision unless the ALJ finds two or more opinions "equally persuasive."

6    § 404.1520c(b)(2).  No such finding was made here.  Thus, the undersigned finds no error in the

7    ALJ's lack of any further discussion regarding Dr. Rosenbaum's status or treatment relationship.

8         Further, to the extent plaintiff argues the ALJ failed to clearly articulate his rationale

9    regarding the supportability/consistency of Dr. Rosenbaum's opinion, or the inconsistencies

10   between the medical evidence and the PAMFs, the court finds the decision's path able to be

11   discerned.  Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency

12   explains its decision with less than ideal clarity, we must uphold it if the agency's path may

13   reasonably be discerned.").  As discussed above, while the decision does not connect the evidence

14   cited with the ALJ's conclusions as explicitly as plaintiff might wish, the ALJ's discussion of

15   each set of medical opinions is followed by a paragraph discussing the relevant evidence.  (AT

16   35-38.)  This section was preceded by a summary of the medical evidence itself.  (AT 33-35.)

17   Thus, the court finds no error in a lack of clarity.

18        Finally, as to the Appeals Council's finding that the September 2020 opinion of Dr.

19   Stroller would not have changed the outcome of the decision, the undersigned finds no error.  (AT

20   2.)  Dr. Stroller expressed similar opinions regarding plaintiff's physical limitations, including

21   that she has been unable to work since she began treatments in Stroller's office.  Dr. Stroller also

22   summarized plaintiff's treatment history and linked this opinion with Dr. Rosenbaum's more-

23   restrictive opinion.  (AT 22-23.)  However, the ALJ had access to plaintiff's records from this

24   time period, and as noted above considered these records not only in rejecting Dr. Rosenbaum but

25   also in formulating an RFC less restrictive than what was recommended in the PAMFs.  The same

26   rationale applies to Dr. Stroller's opinion, such that no reversible error exists.  Brewes v. Comm'r,

27   682 F.3d 1157, 1163 (9th Cir. 2012) (noting evidence could be considered if "submitted for the

28   first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's

1    decision was supported by substantial evidence").

2        **2. Plaintiff's Mental Impairments**

3        Plaintiff contends that, in tandem with her physically-disabling conditions related to her

4    chronic fatigue syndrome, the ALJ should have found her disabled due to her mental

5    impairments.  Plaintiff specifically cites to Dr. Rosenbaum's findings regarding her short-term

6    memory deficit, concentration limits, and inability to tolerate stress.  (AT 442-43.)  Further,

7    plaintiff notes her medical records from Sacramento County Mental Health recording her

8    symptoms of memory issues, hopelessness, and anxiety, as well as clinical findings of rambling

9    speech, paranoia and tangential thought processes (see, e.g., AT 457, 461.)  Finally, plaintiff cites

10   to the PAMF opinions that plaintiff "would not do well with public contact and likely would have

11   some diff[iculty] interacting otherwise."  (AT 144.)  Despite these facts, plaintiff notes the ALJ

12   formulated an RFC allowing for "frequent" coworker and supervisor contact, "occasional"

13   interactions with the public, only "simple one-to-two step instructions," no "fast production

14   norms."  (AT 32.)

15       Under the step-two analysis, the ALJ considered the four treatment areas defined by

16   Paragraph B of the regulations.[3]  (AT 30-32.)  The ALJ found the medical records and daily

17   activities supported no more than moderate limitations in plaintiff's ability to (1) understand,

18   remember, and apply information (AT 30-31, citing AT 276-86 (plaintiff's 2019 functional

19   report); AT 449-85 (treatment records from March 2018-2019); AT 766-810 (treatment records

20   from January to May of 2020)); (2) interact with others (AT 31, citing AT 276-86; 449-85; 766-

---

[3] At step two, the ALJ is to distinguish between those impairments that are "severe" and "non-severe."  20 C.F.R. § 404.1520.  Allegations of disability due to any mental impairment requires an ALJ "to follow a special psychiatric review technique."  Keyser v. Comm'r, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a).  This includes rating the degree of functional limitation resulting from any impairments in four main areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) and adapting or managing oneself.  20 C.F.R. § 404, Subpt. P, Appx. 1 (Paragraph B).  To be deemed disabled under the Listings, the ALJ checks for an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  See Id. at Listing 12.00A "Mental Disorders"; see also 20 C.F.R. § 404.1520a(c)(4) and (d)(1)-(3) (noting use of a five-point scale of "[n]one, mild, moderate, marked, and extreme," and generally directing that a rating of "none" or "mild" will result in a non-severe finding, while "severe" findings require a comparison to the Listings and consideration at the RFC stage).

810); (3) concentrate, persist, or maintain pace (AT 31, citing AT 276-86; 449-85; 766-810 (medical records from Sac. Community Clinic); 766-810); and (4) adapting or managing oneself (see id.).  These findings constitute substantial evidence, and while the ALJ did not cite every piece of evidence referenced by plaintiff, the decision adequately considered these conditions in the ALJ's paragraph B findings.  Ford, 950 F.3d at 1154 (noting the substantial evidence standard); Howard, 341 F.3d at 1012 (reminding that an ALJ need not discuss every piece of evidence).  Further, the ALJ articulated his rationale for discounting Dr. Rosenbaum's opinions, which includes those on plaintiff's mental impairments, and as noted above the court finds no error.  See, e.g., Le, 318 F. App'x at 554 (citing Magallanes, 881 F.2d at 755).  To the extent the ALJ declined to assign more than moderate limitations based on plaintiff's subjective symptom testimony, or the portions of Dr. Rosenbaum's opinion that were transcriptions of plaintiff's symptom testimony, the court also finds no error (as discussed in Section B below).  See, e.g., Brown v. Comm'r, 2021 WL 4078015, at *12 (E.D. Cal. Sept. 8, 2021) (finding no error where the ALJ found a physician's opinion unpersuasive where "it was largely dependent on such symptom testimony.").

After the ALJ's decision, plaintiff submitted her claim to the Appeals Council alongside a number of medical records that were not presented to the ALJ.  Among those was a medical source statement from Dr. Gordon, dated October 20, 2020.  (AT 11-17.)  Dr. Gordon noted he was meeting with plaintiff for the first time, although plaintiff had been with his clinic since January of 2020.  Dr. Gordon cited a diagnosis of major depressive disorder-recurrent-moderate, and assigned numerous "poor or none" mental limitations to plaintiff, including in her ability to understand and remember detailed instructions, maintain attention, sustain an ordinary routine without special supervision, perform at a consistent pace without unreasonable rest periods, respond appropriately to changes in routine, and deal with normal work stress.  (AT 14-15.)  Dr. Gordon also noted that a majority of his report was based on plaintiff's subjective symptom reports.  (See, e.g., AT 15 ("Again, I am answering based on clients' self-report.").)  The Appeals Council appears to have declined to consider Dr. Gordon's opinion, as it was dated after the date of the ALJ's decision and did not "relate to the period at issue."  (AT 2.)

The undersigned is concerned about the Appeals Council's not considering Dr. Gordon's opinion. The regulations require consideration of additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). This applies even if the evidence is dated after the relevant period, so long as the evidence discusses the claimant's medical history going back to the period in question. See, e.g., Edgecomb v. Berryhill, 741 F. App'x 390, 393 (9th Cir. 2018) (finding a later-dated opinion should have been considered because it related back to the period at issue). Here, a plain read of Dr. Gordon's opinion shows that his opinion relates to his clinic's treatment of plaintiff since January of 2020, and the ALJ's decision was not released until August 3, 2020. (See AT 11.) Further, Dr. Gordon's assessments concerned plaintiff's depression, which the ALJ included as one of plaintiff's severe impairments at step two. (AT 30.) Thus, the salient question appears to be whether Dr. Gordon's opinion would have changed the outcome of plaintiff's case.

The undersigned finds Dr. Gordon's opinion has no effect, as the majority of Dr. Gordon's findings appear to be based on plaintiff's subjective statements, which the ALJ properly rejected (as described below). 20 C.F.R. 404.1529(a) (requiring that when asserting a condition has more than a minimal effect, the plaintiff must provide medical evidence beyond a mere diagnosis and cannot rely solely on symptom testimony). See Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (noting how an ALJ does not err in failing to rely on a doctor's opinion where it is premised on a plaintiff's subjective reports that were also properly discounted). Further, though the ALJ did not have the benefit of Dr. Gordon's written opinion, many of those limitations were similarly expressed elsewhere—limitations the ALJ rejected with substantial evidence for support (as noted above). See, e.g., Jalos v. Berryhill, 2018 WL 2276637, at *4 (C.D. Cal. May 16, 2018) (finding harmless error where, even if ALJ failed to sufficiently address a medical opinion, other similar evidence was properly rejected).

**Medical Opinions - Conclusion**

For the above reasons, the undersigned finds no error in the ALJ's assessment of the medical opinions regarding plaintiff's physical or mental impairments.

12

**B. The ALJ properly relied on medical evidence and conservative treatment plans in discounting plaintiff's subjective symptom testimony.**

**<u>Legal Standards</u>**

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability.  20 C.F.R § 404.1529(a).  If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose.  <u>See</u> <u>Treichler v. Comm'r</u>, 775 F.3d 1090, 1106 (9th Cir. 2014).  In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

<u>Revels v. Berryhill</u>, 874 F.3d 648, 655 (9th Cir. 2017) (quoting <u>Garrison</u>, 759 F.3d at 1014-15).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony."  <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 483 (9th Cir. 2015) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46 (9th Cir. 1991)).  Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record.  <u>See</u> <u>Tommasetti</u>, 533 F.3d at 1040; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider.  <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

1    **Analysis**

2    Plaintiff alleges the severity of the symptoms caused by her impairments results in

3    complete disability. Plaintiff cites her testimony that she spends 20 hours a day in bed and being

4    laid up for two days after walking the length of four houses, plus her inability to sleep, lift or

5    carry objects, inability to cope with her depression and anxiety, and her beliefs concerning the

6    ongoing effects of a hepatitis B vaccination from 15-20 years prior.  (See AT 33 (summarizing

7    AT 57-60; 64-76; 78-80.)  Although the ALJ determined plaintiff's impairment could reasonably

8    cause plaintiff's alleged symptoms, the ALJ found the severity of plaintiff's reported symptoms

9    was unsupported by medical evidence, the evidence of conservative treatment, and certain daily

10   activities.  (See id.)  Rather than discounting plaintiff's conditions entirely, the ALJ accounted for

11   her impairments by adding numerous limitations in the RFC.  (AT 32.)

12   Regarding each of these arguments, the undersigned finds no error in the ALJ's treatment

13   of plaintiff's symptom testimony.  Among other things, the ALJ noted the medical evidence

14   provided no support for plaintiff's contentions regarding the effects of a decades' old vaccine.

15   The ALJ also noted that despite the extreme limitations plaintiff testified to concerning her

16   inability to get out of bed, walk any great distance, or perform other physical activities, plaintiff's

17   course of treatment primarily consisted of diet, exercise, and use of over the counter medications.

18   (AT 34-35, citing various records.)  The ALJ discussed other, more extensive treatments

19   facilitated by plaintiff's doctors, but these reports did not uncover any significant issues with

20   plaintiff's neurology.  (See AT 37-38.)  The ALJ's reasoning on this point is not faulty, as a lack

21   of medical evidence and conservative course of treatment from plaintiff's medical providers are

22   sufficient reasons to discount a plaintiff's testimony.  See Carmickle v. Comm'r, 533 F.3d 1155,

23   1161 (9th Cir. 2008) (noting that though a lack of medical evidence cannot form the sole basis for

24   discounting subjective symptom testimony, it is a factor that the ALJ can consider); Tommasetti,

25   533 F.3d at 1039-40 (that claimant "did not seek an aggressive treatment plan" and underwent

26   conservative treatment undermines allegations of disabling impairment); see also, e.g., Tatyana

27   K. v. Berryhill, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (symptom testimony properly

28   rejected due to conservative treatment and medical records, including that there was "no evidence

1  in the record" of a particular condition causing a limitation).

2         Similarly, the ALJ properly relied upon the medical evidence of record and conservative

3  course of treatment when discounting the more severe aspects of plaintiff's testimony regarding

4  her mental impairments.  The ALJ specifically notes plaintiff's depression was routinely treated

5  with medication management.  (AT 38.)  Earlier in the decision, the ALJ, noted plaintiff's

6  evaluations with her psychiatrist, Dr. Nguyen, as well as treatment with El Hogar Community

7  Services, finding her treatment consisted mainly of prescriptions and, at worst, intermittent

8  escalation of symptoms.  (AT 35.)  These again are sufficient for the undersigned to find no

9  reversible error in the ALJ's treatment of plaintiff's mental-impairments testimony.  Carmickle,

10  533 F.3d at 1161; Tommasetti, 533 F.3d at 1039-40.

11         For these reasons, the court finds no error in the ALJ's treatment of plaintiff's subjective

12  symptom testimony.

13  **C.  Lay Testimony**

14         Finally, plaintiff challenges the ALJ's failure to discuss the third-party statements

15  provided by plaintiff's father (AT 266-73), as well as the Appeals Council's failure to similarly

16  discuss the statements of three other third-party statements (AT 8-9, 10, and 121).  Plaintiff

17  contends each of these statements provide additional support for her asserted limitations.

18         Under the new regulations regarding non-medical statements in the record, the

19  Commissioner is no longer required to articulate "germane" reasons for discounting a lay

20  witness's testimony.  See Molina, 674 F.3d at 1114.  Under the post-2017 regulations, the

21  Commissioner is instead required to "consider" all evidence but no longer require an ALJ to

22  articulate a finding on such evidence.  20 C.F.R. 404.1520c(d).  Nonmedical sources include

23  "[f]amily members, caregivers, friends, neighbors, employers, and clergy."  20 C.F.R.

24  § 404.1502(e)(4).  To the extent the ALJ is required to "consider" these nonmedical sources, the

25  court still reviews for legal error and substantial evidence, including whether the ALJ cherry-

26  picked around the lay witness statements to construct a result.  See Holohan v. Massanari, 246

27  F.3d 1195, 1205 (9th Cir. 2001) (an ALJ's "selective . . . reliance" on the record does not meet

28  the substantial-evidence standard).

1    Here, the undersigned is satisfied that these statements were appropriately considered and

2  the ALJ did not cherry-pick around the statements to construct a result.  The ALJ noted what

3  evidence was admitted into the record (AT 27), and this included plaintiff's father's statement.

4  Further, the Appeals Council's notice stated plaintiff's three other third-party statements were

5  incorporated into the record but that they had no effect on the outcome.[4]  (AT 2.)  Beyond this,

6  neither the ALJ nor the Appeals Council were required to articulate findings on these statements,

7  and similar claims were rejected under plaintiff's testimony and the medical evidence and

8  opinions.  20 C.F.R. 404.1520c(d); See Holohan, 246 F.3d at 1205.

9  **V.    CONCLUSION**

10    Accordingly, IT IS HEREBY ORDERED that:

11    1.    Plaintiff's motion for summary judgment (ECF No. 17) is DENIED;

12    2.    The Commissioner's cross-motion (ECF No. 20) is GRANTED;

13    3.    The final decision of the Commissioner is AFFIRMED; and

14    4.    The Clerk of Court is directed to CLOSE this case.

15  Dated:  September 1, 2022

16

17  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

18

19  rumm.202

20

21

---

22  [4] There is some ambiguity as to whether the Appeals Council incorporated this evidence into the
    record and rejected it, or whether the Council "did not exhibit" this evidence.  (See AT 2.)  It

23  appears the Council did in fact consider these statements, as the Council's letter makes a finding
    that this evidence did not show a reasonable probability that the outcome would have been

24  different.  Thus, the undersigned interprets this as a statement the evidence submitted after the
    ALJ's decision was released were in fact considered and placed into the record.  See, e.g.,

25  McLaughlin v. Saul, 2019 WL 3202806, at *5 (E.D. Cal. July 16, 2019) (finding AC's statement
    that the evidence was not considered, then finding it would not have changed the outcome, to be

26  ambiguous, and so court would consider the evidence part of the record); Deliny S. v. Berryhill,

27  2019 WL 1259410, at *1 (C.D. Cal. Mar. 19, 2019) (same); Mayeda-Williams v. Comm'r, 2019
    WL 157918, at *5 (D. Alaska Jan. 10, 2019) (same, but with the AC statement that it did not

28  "consider or exhibit" the evidence).

16